UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE L. WESTFALL,

                              Plaintiff,

                                                                               DECISION AND ORDER

                                                                                13-CV-6504L

                              v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

      Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act"), to review the final decision of the Commissioner.

      On January 24, 2011, plaintiff applied for Supplemental Security Income benefits under title XVI of the Act. Plaintiff alleged an onset of inability to work since January 24, 2011. (Administrative Transcript ("T.") 143). Plaintiff's application was denied. (T. 49-52). She then requested a hearing, which was held on May 4, 2012, via video teleconference before Administrative Law Judge ("ALJ"), Mary Joan McNamara. (46-86, 105-123). The ALJ issued a decision on May 23, 2012, finding that plaintiff was not disabled under the Act and could

perform light work with some limitations. (T. 6-26). Plaintiff petitioned for review by the Appeals Council, which was denied on July 24, 2013. (T. 1-5). Plaintiff now appeals from that decision. Plaintiff has moved (Dkt. #7) and the Commissioner has cross moved (Dkt. #8) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).

## DISCUSSION

**I.        Standard for determining liability**

An individual suffers from a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

To determine if a claimant is disabled under the Act, the ALJ follows a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 C.F.R §§ 404.1509, 404.1520. The ALJ must first decide if the claimant is engaged in substantial gainful employment. If not, she will examine whether the claimant suffers from a severe impairment. If the claimant does, the ALJ analyzes if the impairment meets or equals the criteria detailed in Appendix 1 of Subpart P of Regulation No. 4. If the claimant's impairment equals the criteria, the claimant is disabled. If the impairment does not, the analysis proceeds and the ALJ establishes the claimant's residual functional capacity ("RFC"). RFC is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R § 404.1520(e), (f). If the claimant is able to perform past

relevant jobs with the established RFC, the claimant is not disabled. If not, the analysis progresses to the final step where the Commissioner has the burden of proving the claimant is not disabled. The Commissioner must show this with evidence demonstrating that the claimant "retains a functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)); *see also* 20 C.F.R § 404.1560(c).

The Court must affirm the Commissioner's decision that a plaintiff is not disabled if the decision is supported by substantial evidence and the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Melville v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). In this context, substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court considers the whole record, including evidence from both sides. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998). Further, "where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Upon careful review of the entire record, I believe that ALJ McNamara applied the correct legal standards, that her finding that plaintiff is not disabled is supported by substantial evidence, and that the ALJ did not err in finding that plaintiff was not fully credible.

The ALJ summarized plaintiff's medical records, concentrating on plaintiff's musculoskeletal pain, depression and learning impairments. (T. 5-12). I believe the evidence supports the ALJ's conclusion that plaintiff, then a twenty-three year old woman with a high school education (GED) and past relevant work in janitorial and factory positions, was not disabled. (T. 210). The record supports the ALJ's finding that plaintiff was able to substantially perform the demands of unskilled, light work, with some limitations. *See* 20 C.F.R Part 404, Subpart P, App. 2, Rule 202.20.

## II.     The ALJ's Decision

At step one, the ALJ found that although plaintiff had some work experience, she had not engaged in substantial gainful activity since her alleged onset date of January 24, 2011. (T. 11 (citing 20 C.F.R § 416.971 *et* seq.)). Next, the ALJ concluded that the claimant suffered from the severe impairments of degenerative disc disease, obesity, borderline intellectual functioning, and a mood disorder. (T. 11 (citing 20 C.F.R § 416.920(c)). The ALJ found that plaintiff's other medical issues—gastroesophageal reflux disease, allergies, asthma, and attention deficit disorder—did not reach the level of "severe," because plaintiff could successfully manage these issues with medication and they had a minimal impact on plaintiff's daily functioning. (T. 11-12). At step three, the ALJ concluded that plaintiff's impairments did not together meet or medically equal the severity of a listed impairment. (T. 12 (citing 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 416.920(d), 416.925, 416.926))). The ALJ then concluded that plaintiff has the RFC to perform light work with the following limitations: occasionally climb ramps or stairs; never climb ropes or scaffolds; occasionally stoop, kneel, and crouch; avoid exposure to

extreme heat, cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; avoid hazards, machinery, and heights; requires a sit/stand at will work option; understand, remember, and carry out simple instructions and directions; maintain attention and concentration as necessary; maintain a regular schedule; and relate adequately with others. (T. 13). At step four, the ALJ found that plaintiff is incapable of performing any past relevant work. (T. 20 (citing 20 C.F.R § 416.965)). Finally, the ALJ relied on testimony from vocational expert George Starosta to find that a person with plaintiff's RFC and experience could perform several positions existing in significant numbers in the economy: linen folder, cashier, and ticket taker. (T. 21).The ALJ

## A. Accurately Assessed Plaintiff's RFC

The ALJ determined that plaintiff's degenerative disc disease, obesity, borderline intellectual functioning, and mood disorder did not prevent her from performing light work. (T. 13). Plaintiff argues that the ALJ did not properly consider plaintiff's obesity, the ALJ failed to give appropriate weight to the treating source's opinions, and that the ALJ's findings are not supported by substantial evidence. On review of the record, I find that the ALJ properly considered plaintiff's obesity, gave proper weight to the treating source's opinion, and that her decision is supported by substantial evidence.

### 1. The ALJ Properly Considered Plaintiff's Obesity

The ALJ recognized plaintiff's obesity as a severe impairment in the second step of the sequential evaluation. (T. 11). Pursuant to SSR 02-1p, the ALJ also considered plaintiff's obesity in conjunction with other impairments, acknowledging that the combined effect may be greater than the effect of each impairment individually. (T. 12). The ALJ partially based her opinion on

5

the report of examining physician Dr. Look Persaud, which mentioned plaintiff's obesity but did not indicate that any limitations were posed by plaintiff's weight. (T. 449). The record is also devoid of evidence that plaintiff's obesity prevents her from working. Plaintiff's treatment records from the Office of Vocational and Educational Services for Individuals with Disabilities on September 28, 2010, say that, "[plaintiff] has an obesity condition which may be contributing to her difficulties with her back." (T. 431). This report was completed by a vocational rehabilitation counselor, rather than a licensed physician, is conclusory, and is inconsistent with other medical evidence of record. (T. 428, 431). For these reasons, I find that the ALJ properly considered, and accounted for, plaintiff's obesity in determining her RFC.

2. **The ALJ Did Not Err In Declining To Give Controlling Weight to Dr. Wheeler**

The ALJ typically has a duty to give controlling weight to the opinions of plaintiff's treating sources. However, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques or it is inconsistent with the substantial evidence in the record, the ALJ does not have to give the opinion controlling weight. 20 C.F.R § 404.1527(c)(2). In assigning little weight to the opinion of plaintiff's treating primary care physician, Dr. Renee Wheeler, the ALJ observed that Dr. Wheeler's reports are inconsistent with each other, and that the limitations she describes appear to be based solely on plaintiff's subjective complaints. (T. 18). The record supports the ALJ's assertion that Dr. Wheeler's inexplicably varying opinions are not supported by objective medical evidence; while plaintiff's treatment records show that her impairments remained constant throughout the relevant time period, Dr. Wheeler's opinions concerning plaintiff's limitations changed drastically. In some

cases, Dr. Wheeler gave vastly different opinions concerning plaintiff's ability to lift, sit, stand, and walk, within the space of a few days or weeks, without any apparent change in plaintiff's condition, or any other medical basis for doing so. (T. 525). Dr. Wheeler also reported that plaintiff was unable to perform even sedentary work on the same day that reviewing physician Dr. Agatino Dibella's physical RFC assessment stated that plaintiff could perform light work. (T. 478-479). Because Dr. Wheeler's opinions changed frequently, and without explanation, and were inconsistent with substantial record evidence, the ALJ did not err in declining to afford them controlling weight. *See* 20 C.F.R. § 404.1527(d).

### 3. The ALJ's Findings Are Supported By Substantial Evidence

Plaintiff claims that the ALJ's decision is not supported by substantial evidence, arguing that the ALJ chose to rely only on reports that reinforced her decision. However, the ALJ analyzed reports from several examining physicians to reach an informed decision. (T. 14-19). Aside from inconsistencies in some of Dr. Wheeler's reports, which are unsupported by any objective medical evidence, the totality of the record is consistent with the ALJ's decision. The ALJ considered the effect of plaintiff's degenerative disc disease on her ability to work and used the record to determine appropriate limitations. (T. 16). The Court notes that other evidence of record, including medical reports not mentioned by the ALJ, are consistent with the ALJ's RFC findings. (T. 473-78). For example, the physical RFC assessment by reviewing physician Dr. DiBella indicates that plaintiff's limitations include heavy lifting, prolonged walking, and frequent climbing. (T. 475). Examining physician, Dr. Persaud's report based on an examination on March 10, 2011, also indicates that plaintiff appears well and is in no acute distress. (T. 455).

Plaintiff also indicated on multiple occasions that her back pain was improving with treatment and the pain is "off and on." (T. 474, 559). This evidence further supports the ALJ's RFC determination.

The ALJ's assessment of plaintiff's mental impairments is also supported by substantial evidence in the record. Dr. Wheeler's examinations of plaintiff do not speak extensively to plaintiff's mental abilities and the ALJ correctly relied upon the psychiatric examination reports of examining psychologists, Dr. Sara Long and Dr. Drew Arnold in assessing plaintiff's mental RFC. (T. 18). These reports speak to plaintiff's psychological and cognitive health but state that her impairments are not significant enough to interfere with plaintiff's ability to function on a daily basis. (T. 450).

In finding that plaintiff's mental impairments, individually and in combination, do not meet or medically equal the criteria of the listings, the ALJ was required to assess the severity of plaintiff's impairments under the "paragraph B" criteria. In doing so, the ALJ assessed whether the impairments resulted in at least two of the following; marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (T. 12). A marked limitation is defined as more than moderate, but less than extreme. *Id.* "Repeated episodes of decompensation, each of extended duration, means three episodes within [one] year, or an average of every [four] months, each lasting for at least [two] weeks. *Id.* Plaintiff has mild restrictions in activities of daily living because she is able to perform personal care needs, cook, shop, do household chores, and engage in other recreational activities. *Id.*

Plaintiff also has mild restrictions in social functioning because generally, plaintiff experiences good socialization with family, friends, and individuals at public places. *Id.* Plaintiff experiences moderate difficulties with concentration, persistence, and pace. (T. 13). Although plaintiff is possibly functioning at a below average intellectual level, plaintiff is able to focus on television regularly, plaintiff passed the GED on her first try, plaintiff has a driver's permit, and plaintiff is able to handle basic finances. *Id.* Lastly, plaintiff has had no periods of decompensation that were of extended duration. *Id.* The plaintiff does not have a marked limitation in at least two areas, or one marked limitation and repeated episodes of extended duration decompensation so the "paragraph B" criteria are not met.

A review of the entire record shows that the limitations included in plaintiff's RFC—ability to understand and carry out simple instructions, maintain concentration and a regular schedule, relate appropriately to others—are supported by the substantial evidence in the record, and the record does not suggest any more substantial level of limitation.

The Court therefore finds that the ALJ correctly determined that plaintiff had the RFC to perform a limited range of light work. I also note that even if the ALJ had given controlling weight to Dr. Wheeler's more restrictive opinions and found that plaintiff was limited to sedentary work, she could still perform the positions identified by the vocational expert—linen folder, cashier, ticket taker.

**B. Substantial Evidence Supports The ALJ's Finding That Plaintiff Is Not FullyCredible**

To analyze plaintiff's symptoms, the ALJ followed the mandatory two-step process in which she determined whether there was an underlying medically determinable impairment that

could be reasonably expected to cause plaintiff's symptoms. (T. 14). Next, the ALJ evaluated the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limited plaintiff's ability to function. *Id.* The ALJ's determination that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are not credible is supported by substantial evidence. An ALJ should consider seven factors to assess plaintiff's credibility, however the ALJ need not expressly discuss each factor should she provide reasons that are "sufficiently specific to conclude that [s]he considered the entire evidentiary record in arriving at h[er] determination." *Wischoff v. Astrue*, No. 08-CV-6367-T, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010). Here, the ALJ discussed, *inter alia*, plaintiff's daily activities, aggravating factors, and treatment, as well as plaintiff's educational, medical, work, and home background. (T. 14).

Initially, plaintiff's self-reported daily activities, which include cleaning, babysitting children, and caring for pets multiple times per week, are inconsistent with her testimony that, at times, she forgets to handle her own personal needs, such as eating. (T. 169-170, 455). Also, the record reveals that plaintiff has consistently failed to follow the physicians' recommended treatments—doing physical therapy exercises, losing weight, quitting smoking, attending additional healthcare appointments, and taking prescribed medications—indicating that her symptoms are tolerable without further attempts to mitigate them. (T. 55-57, 71, 450, 554, 564). I find no reason to disturb the ALJ's finding that plaintiff's testimony concerning her limitations was not credible.

## CONCLUSION

For the reasons set forth above, the Commissioner's cross motion for judgment on the pleadings (Dkt. #8) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 7, 2015.

11